**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA    )
    )
      v.    )    02: 05cr219
    )
THOMAS EDWARD THROCKMORTON    )

**MEMORANDUM OPINION AND ORDER OF COURT**

Defendant, Thomas Edward Throckmorton, was indicted by a Grand Jury on July 26, 2005, and charged with one count of illegal possession with intent to distribute 100 kilograms or more of a mixture and substance containing a detectable amount of marijuana, in violation of Title 21, United States Code, sections 841(a)(1) and 841(b)(1)(B)(vii).

On September 28, 2005, Defendant, through counsel, filed several pretrial motions, including the instant MOTION TO SUPPRESS ALL ITEMS SEIZED FROM THE 1988 GMC 2500 3/4 TON TRUCK REGISTERED TO INDUSTRIAL CONSTRUCTION ENTERPRISE (*Document No. 17-7*).  Defendant seeks to suppress all of the evidence seized from the truck because "no probable cause existed to establish that evidence of a crime or contraband was present in the vehicle" or, in the alternative, that "said search is illegal as Robert Gailey did not have the authority to consent to a search of Defendant's vehicle . . ."  Mot. at 12.  The government, of course, argues that both the initial stop and the subsequent search of the truck were lawful.

On November 15, 2005, the Court conducted an evidentiary hearing on Defendant's Motion to Suppress Evidence.  The government presented two witnesses on the stop and search of the truck:  Deputy Sheriff Raymond Pracht, of the Phelps County, Missouri, Sheriff's

Department, and Robert Gailey, the driver of the truck.   At the hearing, all parties were represented by counsel who presented and argued the issues skillfully and effectively.

On November 21, 2005, Defendant filed a Supplemental Brief in Support of  Motion to Suppress (Document No. 24), to which the government responded on December 14, 2005 (Document No. 25).

The testimony from the suppression hearing has not been transcribed to date. However, the Court is prepared to issue its Opinion based upon the testimony and evidence presented at the suppression hearing, the applicable law, and the Court's notes and recollection.


## FINDINGS OF FACT

On July 17, 2005, Deputy Sheriff Raymond Pracht ("Pracht") of the Phelps County, Missouri, Sheriff's Department, was in uniform, assigned to criminal interdiction, and was working the Interstate 44/ Sugar Tree Road Interchange. Several hundred yards before the Sugar Tree Road Interchange, the county police had posted signs on the highway, which advised that there was a police checkpoint stop ahead.  Pracht testified, however, on cross examination that this was a ruse as there was no actual checkpoint stop ahead.  Pracht also testified that the "ruse" was not intended just to find drug traffickers; that the police have discovered stolen cars and abducted children during the use of these ruse operations.

 Pracht was alone in his car parked on a private service road, near the top of the exit ramp off the interstate.  From his vantage point, the interstate was not too visible, but he could see all cars as they exited off the highway and approached the intersection.

Pracht saw a black extended cab GMC truck exit off I-44, approach the top of the exit ramp, roll through the stop sign, and turn right.  Pracht then left his position and pulled the truck over for failure to stop at the stop sign, a traffic violation.   While still in his car, Pracht radioed in the license plate number on the truck and called dispatch.  He then exited his car and approached the truck.  The driver of the truck, Robert Gailey ("Gailey"), remained in the cab.

Pracht explained to Gailey why he pulled him over, directed Gailey to get out of the truck, and then obtained from Gailey his drivers license, registration and insurance information.  According to Pracht, Gailey admitted to running the stop sign and apologized.  Gailey told Pracht that he had exited the highway in order to get a map.  Pracht thought this explanation was unusual because the Sugar Tree interchange is isolated with no lights, stores or gas stations in either direction.

Gailey also told Pracht that he was coming from Tucson, Arizona, and going to Pittsburgh, Pennsylvania.  Pracht testified that Gailey appeared to be nervous.  He would not make eye contact; he was licking his lips; and his hands were visibly shaking.   Pracht also noted that Gailey gave inconsistent statements about his employment.  For example, Gailey told Pracht that he was unemployed and had been in Tucson looking for work.  However, when Pracht asked who the truck was registered to, Gailey responded that the truck was registered and owned by "his boss."[1]

Based on his observations, Pracht suspected that Gailey was involved in criminal activity.  Gailey denied having any drugs in the truck.

---

[1]     The truck was registered in the name of Industrial Construction Enterprise, 1001 Merchant Street, Ambridge, Pennsylvania.

3

During the time that Pracht was talking to Gailey, a canine officer arrived at the scene.  Pracht testified that the canine officer works assignments with the deputy sheriffs and serves as a "backup" for safety.  Pracht could not remember whether the canine officer arrived at the scene as a result of Pracht calling him or if he just happened to show up.

Pracht told the canine officer about his suspicion of possible criminal activity.   The police dog walked around the vehicle and "alerted" the officers both to the rear of the cab of the truck and to the front of the truck.[2]  Pracht testified that once the dog alerted, he believed he had probable cause to believe narcotics were in the truck.  He then began to look closely at the truck.  He tapped the fuel tanks and noted that one side was cool to the touch and sounded solid; the other side was hot to the touch and sounded hollow.

Pracht then informed Gailey that because he thought there was contraband in the truck the police were going to take the truck to the sheriff's department garage.  Pracht handcuffed Gailey and together they rode in the police car to the garage, where the truck was turned over to an inspector.  Upon opening the side compartment of the truck, a substantial amount of marijuana was found.[3]  The truck was then impounded. Gailey never asked for the truck to be returned to him.

Robert Gailey testified that the 1988 GMC  pickup truck was owned by his boss, Thomas Throckmorton ("Throckmorton").  In late June, early July, 2005, Throckmorton had told Gailey to drive the truck to Tucson to "pick up weed."  The drive to Tucson took Gailey

---

[2]     The dog was trained to bark and sit down when it detected narcotics.

[3]     Trooper Ed Walker testified that 250 pounds of marijuana had been found inside the side compartment of the GMC truck.

approximately two and a half (2-1/2) days.  The gas for the truck and his meals were paid for by Throckmorton.  When Gailey arrived in Tucson, he drove to a Motel 6, where he checked-in and parked the truck in the parking lot, leaving the keys in the truck.  The next morning, the truck was no longer in the parking lot.  Gailey did not know who had taken the truck, but he testified that he knew that it was not stolen because Throckmorton had told him that someone would pick up the truck from the parking lot.

After three or four days in Tucson, Gailey flew from Tucson back to Pittsburgh, using an airline ticket purchased for him by Throckmorton.  A couple of weeks later, Gailey returned to Tucson, again using a plane ticket purchased by Throckmorton.  Upon his arrival in Tucson, Gailey returned to the same Motel 6.  The truck was not in the parking lot upon his arrival, but the next morning the truck was back in the parking lot, with the keys in it.  Gailey took the truck and proceeded to drive back to Pittsburgh.  Gailey testified that he did not know for sure whether the truck had "dope" in it; as "there's always a 50/50 chance and you never know if you're going to get it."

Gailey testified that he was stopped by the police on I-44 when he exited the highway to get a map.  He did not see the road signs alerting drivers to a checkpoint stop ahead, but rather he exited the highway because he wanted to avoid a traffic jam.  Gailey testified that he was not lost, but wanted a map in order to get around the traffic.

On direct-examination, Gailey denied that he ran through the stop sign, but instead testified that he came to a complete stop.  He testified that he did not know why the police pulled him over, but he admitted that he was nervous that the police would find the marijuana in the truck.  Gailey testified that the odor from the marijuana was strong and that someone

could easily smell it from outside the truck, even though the marijuana was packaged and stored inside a compartment of the truck.   Gailey testified, however, that Pracht did not say anything to him regarding the odor of marijuana.

Once the police discovered the marijuana, they asked Gailey if he would follow through on his delivery to Defendant and he agreed.  Thereafter, some government agents drove the truck back to the Pittsburgh area and Gailey, in handcuffs, rode with police in a patrol car which traveled in front of the truck.

Gailey testified that he did not give consent to search the truck because it was not his truck.

## CONCLUSIONS OF LAW

### a.    *Standing*

The government has alleged that Throckmorton does not have standing to challenge the search and seizure of the GMC truck.  However, this argument can quickly be rejected.  The truck in question was owned by Industrial Construction Enterprise, a company of which Throckmorton is the sole owner.

The United States Supreme Court has instructed that standing may be established in any one of the following three circumstances:

1.    Presence on the premises at the time of the contested search;

2.    Proprietary or possessory interest in the premises; or

3.    Defendant is charged with an offense that includes, as an essential element of the offense charged, possession of the seized evidence at the time of the contested search and seizure.

6

*Brown v. United States,* 411 U.S. 223, 229 (1973).  Here, Throckmorton clearly meets two of the three above identified factors.  First, the evidence establishes a definite proprietary or possessory interest in the truck on the part of Throckmorton.  Second, Throckmorton has been charged with possession with intent to distribute the marijuana that was found in the truck.  Gailey testified at the suppression hearing that the truck and marijuana seized in Missouri belonged to Throckmorton.

For these reasons, the Court finds and rules that Throckmorton has standing to contest the seizure and search of the GMC truck.

### b.      *The Initial Traffic Stop*

A traffic stop of a vehicle and the detention of its occupants is a "seizure" under the Fourth Amendment, "subject to the constitutional imperative it not be 'unreasonable' under the circumstances."  *Whren v. United States*, 517 U.S. 806, 809-10 (1996).  The decision to stop a vehicle when the police have probable cause to believe that a traffic violation has occurred is reasonable.  *Whren*, 517 U.S. at 810; *United States v. Johnson,* 63 F.3d 242 (3d Cir. 1995) (at a minimum, police cannot make a traffic stop without "reasonable suspicion, based on articulable facts, that a traffic violation has occurred").

In this case, the government argues that Deputy Sheriff Pracht had more than reasonable suspicion to believe that a traffic violation had occurred because Pracht actually saw Gailey roll through the stop sign without stopping.  Throckmorton argues that the testimony of Pracht is directly contradicted by the testimony of Gailey, who testified that he came to a full stop at the exit ramp stop sign.  The Court finds that the testimony of Gailey, Defendant's

employee on a directed mission of illegality at the time, is not credible on this issue. Therefore, the Court finds that Pracht's testimony that he saw Gailey roll through the stop sign is credible and, thus, the subsequent traffic violation stop was proper under the circumstances.

### B.      Initial Questioning and Probable Cause to Arrest

A valid traffic stop becomes unreasonable when its scope exceeds the justification for its initiation. *Illinois v. Caballes*, -- U.S. --, 125 S.Ct. 834, 837 (2005). "An investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). During the course of a traffic stop, an officer may ask the driver for his license and registration, request that the driver exit the vehicle, and ask the driver about his or her destination and purpose. *Maryland v. Wilson*, 519 U.S. 408, 415 (1997); *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003). When there is no further justification for the stop, it should end. *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-82 (1975).

However, when an officer "develops a reasonable, articulable suspicion of criminal activity," he may "expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation." *Givan*, 320 F.3d at 458. The officer must only "articulate some minimal, objective justification for an investigatory stop." *Id.* In determining whether there was reasonable suspicion, a court "must consider the totality of the circumstances, in light of the officer's experience." *Id.* The court should "accord great deference to the officer's knowledge of the nature and nuances of the type of criminal activity that he had observed in his experience, almost to the point of permitting it to be the focal point

8

of the analysis." *Id.*   The existence of reasonable suspicion must be based upon a totality of the circumstances. *United States v. Sokolow*, 490 U.S. 1, 8, (1989).

Defendant argues that "[t]he stop and search of the vehicle was unlawful and illegal since no probable cause existed to establish that evidence of a crime or contraband was present in the vehicle at the time."   The Court finds, however, that Defendant's argument ignores a number of observations made by Deputy Sheriff Pracht over the course of the stop that provided reasonable suspicion of illegal activity.   While asking Gailey for his license, registration and insurance information, all of which was well within the bounds of a normal traffic stop, Pracht observed that Gailey was nervous, made no eye contact and his hands were visibly shaking. Pracht then asked Gailey to exit the truck and asked him his origin, destination, and purpose, all of which was again well within the scope of a normal traffic stop.   Gailey replied that he was returning from Tucson to Pittsburgh, after a trip to try to find employment.   Thus, while doing nothing beyond the scope of a valid traffic stop, Pracht learned that Gailey did not own the truck and that the truck was registered to Throckmorton, Gailey's "boss" although Gailey had previously told Pracht that he was unemployed.   Moreover, the police dog had "alerted" the officers to narcotics at two different places on the truck.   Pracht testified that he had worked with the canine officer on many occasions during his thirteen (13) years with the Sheriff's Department.

Accordingly, the Court finds and rules that everything that Pracht observed and learned over the course of the traffic violation stop reasonably suggested that Gailey was likely engaging in criminal activity.   A "reasonable and prudent" observer would conclude that Deputy Sheriff Pracht was well-supported in his suspicion of criminal activity by the "factual

and practical considerations of everyday life." *Illinois v. Gates,* 462 U.S. 213, 231 (1983) (discussing the probable cause standard).

**CONCLUSION**

The initial stop of Gailey's vehicle by Deputy Sheriff Pracht was justified by his personal observation that Gailey had committed a traffic violation.  During the course of the traffic stop, Deputy Sheriff Pracht made a number of observations that provided reasonable suspicion to expand his inquiry beyond the original scope of the traffic stop.  After diligently conducting a proper investigation to confirm his initial suspicion that Gailey was involved in the transportation of illegal drugs, including the narcotics alert by the police dog, Deputy Sheriff Pracht properly took Gailey into custody and seized the truck.

For the reasons hereinabove stated, the Motion to Suppress All Items Seized From the 1988 GMC 2500 3/4 Ton Truck Registered To Industrial Construction Enterprise will be denied.  An appropriate Order follows.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 02: 05cr219 |
| | ) | |
| THOMAS EDWARD THROCKMORTON | ) | |

**ORDER OF COURT**

AND NOW, this 21st day of December, 2005, upon consideration of Defendant's

Motion to Suppress All Items Seized From the 1988 GMC 2500 3/4 Ton Truck Registered To

Industrial Construction Enterprise (*Document No. 17-7*) and after an evidentiary hearing

followed by oral argument of counsel, the Court enters the foregoing Memorandum Opinion.

NOW THEREFORE, it is hereby **ORDERED, ADJUDGED AND DECREED** that

Defendant's Motion to Suppress All Items Seized From the 1988 GMC 2500 3/4 Ton Truck

Registered To Industrial Construction Enterprise is **DENIED.**

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc:     Charles F. Bowers, III, Esquire
        Bowers & Ross
        Email: chadbowers@brf-law.com

        James J. Ross, Esquire
        Bowers & Ross
        Email: jross@brf-law.com

        Almon S. Burke, Jr.,
        Assistant U.S. Attorney
        Email: almon.burke@usdoj.gov